IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


UNITED STATES OF AMERICA                                    PLAINTIFF

vs.                              Civil No. 6:10-CR-60014

ELENA KAY RAMIREZ ET AL.                                    DEFENDANTS


## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before this Court is Defendant Ramirez's Motion to Suppress.  ECF No. 71.[1]  This Motion

was filed on November 10, 2010, and the Government responded to this Motion on November 17,

2010.  ECF No. 72.  The Court held a hearing on this Motion on December 2, 2010 in Hot Springs,

Arkansas.  All Parties appeared at this hearing, and Defendant Ramirez was represented by counsel.

At this hearing, Sergeant Dennis Overton of the Arkansas State Police Department testified, and the

Court was presented with and viewed part of the video footage of Defendant Ramirez's traffic stop.

After this hearing, the Parties also filed additional legal briefing.  ECF Nos. 77-78.  Trial in this

matter is currently set for March 2, 2011.  ECF No. 74.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2009), the Honorable Robert T.

Dawson referred this Motion to this Court for the purpose of making a report and recommendation.

The Court, having reviewed all the relevant briefing and testimony at the hearing, recommends this

Motion be **DENIED** in its entirety**.**

---

[1] The docket entries are referenced by "ECF No. ____."

1

1. <u>**Background**</u>[2]

On Monday, December 18, 2007, Trooper (now Sergeant) Dennis Overton of the Arkansas State Police Department stopped Defendant Ramirez for following too closely. Trooper Overton testified Defendant Ramirez was following within 1 ½ car length prior to passing at speeds of 65-70 miles per hour. The exact time of the stop is in dispute, but it appears the stop took place between approximately 8:45 a.m and 9:45 a.m.[3] The stop occurred at mile marker 100 on I-30 East. After stopping Defendant Ramirez at 9:45 a.m., Trooper Overton exited his patrol car and approached the vehicle on the passenger's side.

Trooper Overton then questioned Defendant Ramirez and co-Defendant Rodriguez through the passenger window. Trooper Overton testified[4] that during this initial questioning, he noticed a single key in the ignition, only a single clothing bag that appeared to be shared between the two women, and a great deal of food and trash in the car. Trooper Overton noticed Defendants exhibited a high level of nervousness, and the vehicle was not owned by either Defendant.[5] Trooper Overton also testified that, during this initial questioning, Defendants stated they were coming from Texarkana.

---

[2] The "Background" is taken from the Parties' briefing as well as the information provided at the hearing in this matter.

[3] Sergeant Overton testified the stop occurred at approximately 8:45 a.m. while the video of the traffic stop indicates the stop occurred at 9:45 a.m. Sergeant Overton also, however, testified that the time stated on the video may not have been accurate. The time of the stop is not dispositive in this case. This Court will use the times as stated on the video (*e.g.,* "9:45 a.m.") to reference the time of the events that transpired on the video but will not decide whether the events actually occurred at those stated times and will not decide whether the stop actually occurred at 8:45 a.m. or 9:45 a.m. All subsequent time references in this opinion refer to the time as stated on the traffic camera video.

[4] These findings are based upon the testimony of Trooper Overton at the suppression hearing. This initial questioning was not captured on the audio from the traffic stop video.

[5] Defendant Ramirez stated that the vehicle belonged to a relative of Defendant Rodriguez.

2

At 9:48 a.m., Trooper Overton went back to his patrol car to complete the traffic stop, and he asked Defendant Ramirez to accompany him to his patrol car. Defendant Ramirez followed him to his patrol car, and both Trooper Overton and Defendant Ramirez entered his patrol car. Trooper Overton then proceeded to ask Defendant Ramirez questions about her trip. During his conversation with Defendant Ramirez, Trooper Overton found Defendants Ramirez and Rodriguez had driven from the Dallas area and not Texarkana as they had originally indicated. Defendant Ramirez also stated she had stayed in the Dallas area at the same hotel on both nights (Saturday and Sunday) and had gone to watch Defendant Rodriguez's husband's band play. Defendant Ramirez was unclear on the hotel name, but she believed it was "Sun Inn" or something close to that name. Six minutes after entering his patrol car, at 9:54 a.m., Trooper Overton left his patrol car, and Defendant Ramirez remained in Trooper Overton's patrol car. Trooper Overton then approached the vehicle in question from the passenger's side and spoke with Defendant Rodriguez alone. He questioned her from 9:54 a.m. until 9:59 a.m. There is no audio of this conversation on the video from the traffic stop. Trooper Overton testified that, during this interview, Defendant Rodriguez provided information that conflicted with Defendant Ramirez's statements to him. He testified Defendant Rodriguez stated that she and Defendant Ramirez had stayed at two different hotels over the weekend in Dallas, and they did not go see her husband's band play that weekend. He also testified that while he questioned Defendant Rodriguez, he asked her if she consented to the search of the vehicle, and she consented.

At 9:59 a.m., Trooper Overton returned to his patrol car and told Defendant Ramirez that Defendant Rodriguez had consented to a search of the vehicle. Defendant Ramirez also consented to the search of the vehicle. At 10:04 a.m., another officer arrived at the scene to assist in the search of the vehicle. Defendant Rodriguez was placed in the patrol car.  At 10:05 a.m., Trooper Overton

gave both Defendants specific directions on how to stop the search if they so desired.  He told them that he was about to begin the search and that if they desired to stop the search at any time, they could honk the horn of his patrol car.  Neither Defendant attempted to honk the horn or withdraw their consent while the search was being conducted.

From 10:06 a.m. until 10:19 a.m., pursuant to Defendants' consent, Trooper Overton and another officer searched the vehicle.  While conducting this search, they found what appeared to be a hidden compartment near the front dashboard in the vehicle.  At 10:19 a.m., after locating that compartment, Trooper Overton read Defendants their *Miranda* rights, but it appears he did not formally put them under arrest at that time.[6]  At 10:28 a.m., Trooper Overton, along with other officers and a private citizen, took the car in for further inspection at a local auto shop[7].  Trooper Overton testified the vehicle was moved to this location for the safety of the individuals searching the vehicle and to protect the vehicle from unnecessary damage.  At 10:37 a.m., drugs were located in the hidden compartment in the vehicle, and Defendants were both formally placed under arrest.

## 2. **Applicable Law**

As a general rule, the burden of proof is on the defendant who seeks to suppress the evidence obtained from the execution of a search warrant.  *Carter v. United States,* 729 F.2d 935, 940 (8th Cir. 1984).  Probable cause exists when an affidavit in support of a warrant sets forth adequate facts to ascertain that there is a "fair probability that contraband or evidence of criminal activity will be found in the particular placed searched." *Illinois v. Gates,* 462 U.S. 213, 238 (1983).  Probable cause

---

[6] Trooper Overton testified at the hearing in this matter that, at this point in the search, the vehicle was not free to leave.  Trooper Overton also indicated that he believed Defendants were not free to leave.  There is, however, no indication from the video or Trooper Overton's testimony that Defendants were formally placed under arrest and restrained until a later time when the narcotics were discovered.

[7] Trooper Overton had requested a tow truck or driver be dispatched to drive the car back to a garage to be searched.

means a "fair probability" and not certainty or even a preponderance of the evidence.  *See Gates,* 462 U.S. at 246.

The duty of a reviewing court is to ensure that the issuing judge has a "substantial basis" for concluding that probable cause existed, and substance deference should be afforded to an issuing magistrate's determination of probable cause.  *See United States v. LaMorie,* 100 F.3d 547 (8th Cir. 1996); *Massachusetts v. Upton,* 466 U.S. 727 (1984).  Additionally, the search warrant should be viewed in its totality, as probable cause is established only if the "totality of the circumstances" indicate a probability of criminal activity.  *See United States v. Fairchild,* 189 F.3d 769, 775 (8th Cir. 1999); *Gates,* 462 U.S. at 230-32.

As for warrantless searches and seizures, the government has the burden of proof to justify the warrantless search.  *See United States v. Twiss,* 127 F.3d 771, 775 (8th Cir. 1997).  As the Eighth Circuit has held, "As a general rule, the burden of proof is on the defendant who seeks to suppress evidence . . . but on the government to justify a warrantless search."  *Carter v. United States,* 729 F.2d 935, 940 (8th Cir. 1984) (internal citation omitted).

**3. Discussion**

Defendant Ramirez filed the present Motion to Suppress contesting the constitutionality of this traffic stop and subsequent search.  She raises three issues related to this stop and subsequent search: (A) whether Trooper Overton had reasonable suspicion to make the initial stop and then to request consent to search; (B) whether probable cause was established before Trooper Overton seized the vehicle; and (C) whether Trooper Overton should have obtained a search warrant once he seized the vehicle.  ECF Nos. 71, 78.  This Court will address each of these three issues raised.

**A.      Initial Stop of Defendant Ramirez and Request to Search**

5

Defendant Ramirez contests the initial stop of the vehicle. Defendant Ramirez also claims Trooper Overton did not have reasonable suspicion to request her consent to search the vehicle. During the hearing on this matter, Trooper Overton testified he initially stopped Defendants because Defendant Ramirez was "following too close" which is a violation of Arkansas traffic law. The Eighth Circuit has held that "[a]n officer who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop comports with the Fourth Amendment." *United States v. Peralez,* 526 F.3d 1115, 1119 (8th Cir. 2008). *See also United States v. Loya,* 528 F.3d 546, 549 (8th Cir. 2008) (noting the defendant was stopped for "following too close" and running a stop sign). Based upon *Peralez,* it appears Trooper Overton was permitted to stop Defendant Ramirez upon observing she was "following too close."

In her Motion to Suppress and accompanying briefing, Defendant Ramirez provides no case law contradicting *Peralez* or supporting her argument that the Trooper Overton's stated reason for the stop–"following too closely"–was improper under the Eighth Circuit's precedent. Rather, Defendant Ramirez argues Trooper Overton's stated reason is not credible because Trooper Overton could not provide specific information on the vehicle Defendant Ramirez was too closely following: "he could not identify what type of vehicle [Defendant Ramirez was following], whether it was a car or truck, and what color or what year it was." ECF No. 78. However, as Trooper Overton stated during the suppression hearing on this matter, the specifics of the other vehicle were irrelevant because Defendant Ramirez was the individual who was illegally following too closely, and the other vehicle was not violating the law by being too closely followed. The Court agrees with Trooper Overton's assessment and finds the specifics of the vehicle Defendant Ramirez was following are irrelevant. Thus, there was no constitutional deficiency with Trooper Overton's initial stop of

Defendant Ramirez.

Defendant Ramirez also contests Trooper Overton's continued questioning after the initial stop was made.  Pursuant to the Fourth Amendment, an officer may ask routine questions, such as the destination, route and purposes of the trip, and whether the officer may search the vehicle.  *See United States v. Bracamontes,* 614 F.3d 813, 816 (8th Cir. 2010).  *See also United States v. $404,905.00 in U.S. Currency,* 182 F.3d 643, 647 (8th Cir. 1999) (holding that "having made a valid traffic stop, the police officer may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning").

Here, Trooper Overton properly asked Defendants Ramirez and Rodriguez routine questions related to their trip while completing his paperwork.  Although the time that it took for him to ask these questions is not dispositive, the traffic video in this case indicates his questioning was only approximately fifteen minutes before he asked to search the vehicle.  Both Defendants then consented to the search.  Such questioning and even his request for consent to search the vehicle are proper under *Bracamontes*.

Defendant Ramirez has two arguments against the continued questioning and subsequent request to search the vehicle.  First, Defendant Ramirez argues that "[f]or the officer to request consent to search the vehicle, the officer has to have reasonable suspicion that the cargo of that vehicle contains illegal contraband and or a weapon."  ECF No. 78.  Defendant Ramirez cites no authority in support of this position.  Indeed, contrary to this claim, in *Bracamontes,* the Eighth Circuit held the initial traffic stop may be accompanied by a request to search the vehicle, and the

7

Eighth Circuit did not require a showing of reasonable suspicion in order to request such consent. 614 F.3d at 816.

Further, even if a showing of reasonable suspicion were required, the Government has made such a showing. Based upon Trooper Overton's testimony, his reasonable suspicion was based upon his initial questioning wherein he noticed a single key in the ignition, only a single bag between the two women, and a great deal of food and trash in the car. Trooper Overton's reasonable suspicion was also based upon his observation that Defendants exhibited a high level of nervousness, and the fact the vehicle did not belong to either Defendant. Additionally, during his questioning of Defendants Trooper Overton determined their stories contained several inconsistencies, including whether they stayed in the same hotel both nights that weekend and whether they went to watch the band play. Thus, this Court finds Trooper Overton had developed reasonable suspicion at the time he requested consent to search the vehicle.

Second, Defendant Ramirez implies the fact Trooper Overton's tone was "that of friendly questioning and not an interrogation" was improper. She cites no authority in support of her claim that a "friendly" tone is constitutionally insufficient. This Court has not found a case suggesting such a conclusion. Further, the Eighth Circuit in *Bracamontes* stated routine questioning was both legal and appropriate. Thus, this Court finds this argument also fails.

**B.      Seizure of the Vehicle**

Defendant Ramirez argues Trooper Overton seized the vehicle in question "prior to probable cause being established." Although she provides no exact time period, based upon her briefing, it appears Defendant Ramirez is referring to 10:19 a.m. which was after the search was conducted, the man-made compartment was located, and Trooper Overton read Defendants their *Miranda* rights.

At that time, Trooper Overton also testified he felt the vehicle was seized.

The standard for probable cause is whether "given the totality of the circumstances, a reasonable prudent person could believe there [was] a fair probability that contraband or evidence of a crime would be found in" the vehicle. *United States v. Barry,* 394 F.3d 1070, 1078 (8th Cir. 2005) (citation omitted).

Under the present facts, Trooper Overton observed a traffic violation whereby Defendant Ramirez was following too close to another vehicle. After the stop, he noticed a single key in the ignition, only a single bag between the two women, and a great deal of food and trash in the car. Trooper Overton also noticed Defendants exhibited a high level of nervousness, and the vehicle did not belong to either Defendant. Upon further questioning, he found Defendants had several inconsistencies in their stories. Based upon that information, he requested consent to search the vehicle and, pursuant to that consent, he found a man-made compartment.

Based upon all of those factors, this Court finds probable cause to conduct a further search inside the man-made compartment because "given the totality of the circumstances, a reasonable prudent pursuant could believe there [was] a fair probably that contraband or evidence of a crime would be found in" the vehicle. Accordingly, this Court finds Defendant Ramirez's second argument–that there was no probable cause to seize the vehicle–is without merit.

C.     **Necessity of a Search Warrant**

Defendant Ramirez claims Trooper Overton should have obtained a search warrant prior to removing and conducting a further search of the vehicle at a garage. As noted above, the video from the traffic stop indicates the car was taken to the garage for a further search at 10:28 a.m. Trooper Overton testified at the suppression hearing that the vehicle was removed from the shoulder of I-30

9

both for safety reasons to protect the individuals at the scene and for the protection of the vehicle so it could be disassembled in a controlled environment at a garage.

The Eighth Circuit previously addressed a case under facts very similar to the facts in this case and held once probable cause has been established to believe contraband is present in a specific part of the vehicle, a warrant is not required to remove the vehicle and conduct a further search of that vehicle in the area of the vehicle where probable cause exists. *See United States v. Olivera-Mendez,* 484 F.3d 505, 512-513 (8th Cir. 2007). Indeed, in *Olivera-Mendez*, it took the police officers six hours after the original traffic stop to locate the narcotics in the man-made compartment. *Id.* at 509. In that case, the vehicle was removed to a garage to be further searched because the weather outside was cold. *Id.* at 507. The Eighth Circuit held as follows regarding the prolonged search of the vehicle:

> Drug couriers may conceal contraband in a manner that requires dismantling of the automobile to recover the drugs, and Kolz [the officer] developed probable cause to believe that the Olivera-Mendez vehicle harbored a hidden compartment. The probable cause to search the vehicle did not "dissipate" simply because it took a long time to complete a reasonable and thorough search of the car.

*Id.* at 512.

Defendant Ramirez did not reference the *Olivera-Mendez* opinion in her briefing or provide any basis for distinguishing that opinion. Defendant Ramirez only argues that no "exigent circumstances" existed during to the search to provide Trooper Overton the right to continue the search of the vehicle without a search warrant. Defendant Ramirez claims such "exigent circumstances" include the "hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger the lives of officers or others." ECF No. 78.

Tellingly, in making the argument that this warrantless search was unjustified, Defendant

Ramirez does not reference the well-recognized "automobile exception" to the Fourth Amendment which authorizes a search of any area of the vehicle in which there is probable cause evidence might be found.[8]  *See California v. Carney,* 471 U.S. 386 (1985).  *See also United States v. Webster,* No. 10-1295, 2010 WL 4366379, at *6 (8th Cir. Nov. 5, 2010) (holding this exception to the Fourth Amendment "'authorizes a search of any area of the vehicle in which the evidence might be found' if probable cause exists").  Defendant Ramirez also does not provide any argument to this Court as to why the automobile exception would not apply.

Under these facts, as outlined above, probable cause existed to further search this man-made compartment.  Trooper Overton and the other individuals only further searched this area of the vehicle where the man-made compartment was located.  Thus, based upon these findings, this Court finds the automobile exception to the Fourth Amendment applies such that a warrant was not required to further search this portion of the vehicle.  Such a holding is also consistent with the Eighth Circuit's determination in *Olivera-Mendez*.

Even if Defendant Ramirez were correct in her claim that probable cause was not sufficient to further search this vehicle, it is very important to note that both Defendants consented to the search of the vehicle.  There is no evidence from the video they were coerced or acted involuntarily.  There is no evidence they ever withdrew their consent.  Indeed, Defendant Ramirez never claims she withdrew her consent to the search.  Defendant Ramirez claims in her brief instead that the "issue of consent" was removed when Trooper Overton read her *Miranda* rights.  Defendant Ramirez, however, cites no legal authority to support this claim.  This Court also finds none.  With no legal

---

[8] Defendant Ramirez instead cites to *United States v. Ross,* 456 U.S. 798 (1982) which pre-dates the decision by the United States Supreme Court in *Carney.*  Further, the opinion in *Ross* related to the scope of the search, and did not, as Defendant Ramirez suggests, require there be "safety or evidentiary concerns" present to search a vehicle when probable cause is present.

support for her claim, this Court cannot find Defendants' consent to search the vehicle was withdrawn by Trooper Overton reading Defendant Ramirez her *Miranda* rights.  This is especially true since it does not appear Defendant Ramirez was formally placed under arrest until the narcotics were discovered.  *See United States v. Shafer,* 608 F.3d 1056, 1064 (8th Cir. 2010) ("Consensual searches are consistent with the Fourth Amendment 'because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.'" (quoting *Florida v. Jimeno,* 500 U.S. 248, 250-51 (1991))).

Defendant Ramirez also argues this search was unconstitutional by referencing a United States Supreme Court case specifically related to a search-incident-to-arrest.  *See Arizona v. Grant,* 129 S. Ct. 1710, 1714 (2009).  Trooper Overton did not conduct a search-incident-to-arrest, and this warrant exception does not apply under the facts of this case.  It does not even appear in the video or from Trooper Overton's testimony that Defendants were formally arrested, cuffed, and secured in the patrol car until after the narcotics were found.  Furthermore, regardless of whether Defendants were formally placed under arrest at that time or an earlier time, based upon these facts, the automobile exception applies, and there is no need to further discuss the search-incident-to-arrest exception.

### 4. Conclusion

In accordance with the foregoing, this Court recommends Defendant Ramirez's Motion to Suppress (ECF No. 71) be **DENIED.**

**Based upon the agreement of the parties, they have ten (10) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. §**

636(b)(1).[9]  **The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).**

**ENTERED this 15th day of December, 2010.**

s/  Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE

---

[9]The Parties agreed at the hearing to shorten the time for filing objections to this Report and Recommendation from fourteen (14) to ten (10) days.

13